IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| JEROME WILLIAMS, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIV. ACTION NO. 3:09cv238-CSC |
| | ) | (WO) |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION and ORDER**

On May 12, 2010, this court ordered that the decision of the Commissioner be reversed and this case be remanded for an award of supplemental security income benefits pursuant to Title XVI, 42 U.S.C. § 1381, *et seq*.  On June 4, 2010, the Commissioner filed a motion to alter or amend judgment pursuant to FED.R.CIV.P. 59(e).

The Commissioner asserts that this court erred in determining that Williams meets the third prong of Listing 1.08.  Specifically, the Commissioner contends that the court failed to consider the definition of "loss of function" in the Musculoskeletal Listings when determining that the medical records establish that "such major function was not restored or expected to be restored within 12 months of onset. 20 C.F.R. Pt. 404, Subpt. P, App.1 § 1.08 (2009)."  Williams argues that Listing 1.08 does not specifically refer to "loss of function" and therefore it would be "manifestly unfair . . . to read into Listing 1.08 something other than the plain meaning of the section."  (Doc. No. 21, Pl's Response, p. 2.)

Section 1.08 provides:

> *Soft tissue injury (e.g., burns)* of an upper or lower extremity, trunk, or face and head, under continuing surgical management, as defined in 1.00M, directed toward the salvage or restoration of major function, and such major function was not restored or expected to be restored within 12 months of onset. Major function of the face and head is described in 1.00O.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.08 (2009).

The Commissioner asks this court to apply the definition of "loss of function" as set forth in § 1.00B(2)(a) and (b) when deciding whether "such major function was not restored or expected to be restored within 12 months of onset" as set forth in the third prong of § 1.08. The Commissioner maintains that, because § 1.00B(2)(a) defines "loss of function" as the "inability to ambulate effectively on a sustained basis" and § 1.00B(2)(b) further defines "ineffective ambulation" as "having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device that limits the functioning of both upper extremities," this court should have considered whether Williams' "ability to effectively ambulate" was not restored or expected to be restored within twelve months of onset.

In statutory construction, the plain meaning of a statute controls unless the language is ambiguous or leads to absurd results. *See United States v. McLymont*, 45 F.3d 400, 401 (11th Cir. 1995). However, the "plain-meaning rule should not be applied to produce a result which is actually inconsistent with the policies underlying the statute." *Bailey v. USX Corp.*, 850 F.2d 1506, 1509 (11th Cir. 1988). The principles of statutory construction apply to federal regulations. *See*, *e.g.*, *Environmental Defense v. Duke Energy Corporation*, 549 U.S.

2

561 (2007) (applying rules of statutory construction to the Clean Air Act and the Environmental Protection Agency's regulations, the New Source Performance Standards).

The court declines to read into § 1.08 a requirement that is not there.  Within the category of musculoskeletal impairments, §§ 1.02A, 1.03, 1.04C, 1.05B, 1.05C, and 1.06B all specify the "inability to ambulate effectively, as defined in 1.00B(2)(b)" as a requirement. Section 1.08, however, requires only that "such major function was not restored or expected to be restored within 12 months of onset."  When reading the listings of musculoskeletal impairments together, it is clear that a "loss of function" requirement, which is defined as an "inability to ambulate effectively," and "a major function ... not restored" are separate concepts.  Thus, the court will give the third prong of § 1.08 its plain and ordinary meaning.

As previously discussed in this Court's opinion, the medical records establish that Williams had numerous surgical procedures after suffering a severe crush injury while working in a factory, that he has endured countless infections, swelling, edema and other problems and sought treatment on an ongoing basis for these steadily worsening medical complications since the date of his initial surgery in June 2005.  His own physicians have repeatedly advised that his condition may never improve.  This court therefore concludes that "such major function was not restored or expected to be restored within 12 months of onset." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.08 (2009).  Consequently, Williams meets § 1.08 of the Listing of Impairments.[1]

_____

[1] The Commissioner does not dispute that Williams meets the first two prongs of Listing 1.08. (Doc. No. 20, p. 3.)

The Commissioner also argues that this court erred in determining that the vocational expert's testimony demonstrates that Williams is unable to perform work. Specifically, the Commissioner contends that the hypothetical questions posed by plaintiff's counsel to the vocational expert included limitations the ALJ found to be not credible. In its Opinion, the court determined as follows:

> . . . Furthermore, the vocational expert testified that a person with Williams' limitations would be unable to perform work. During the hearing, the following discussion occurred:
>
> Counsel: Mr. Tilton, if you assume a job applicant with Mr. Williams' background, job history, education level, the fact that he would likely need to elevate his leg, and the fact that his, his wound care specialist has, has stated in the records that he is periodically going to have infection and/or swelling which is going to likely involve trips to the emergency room. Assuming someone with those requirements or limitations, let's put it that way, would that person still be able, in your opinion, to perform the job duties and be gainfully as a credit card interviewer, production inspector, or escort drive?
>
> Vocational Expert: No, sir.
>
> (R. 44.) The medical records indicate that Williams has suffered from repeated infections, edema, and swelling which have resulted in several visits to medical specialists and hospital emergency rooms. Consequently, Williams would likewise be entitled to benefits based on the medical evidence and the testimony of the vocational expert.

(Doc. No. 16, pp. 11-12.)

Although the Commissioner argues that this court's determination concerning the vocational expert's testimony is incorrect because the ALJ found the limitations as posed by plaintiff's counsel to be not credible, nothing in the ALJ's analysis indicates that the Commissioner properly rejected or otherwise discounted the medical specialists' findings that Williams may need to elevate his leg on occasion and will periodically suffer from infections and/or swelling which will likely involve trips to the emergency room.

Because Williams meets the requirements of Listing 1.08 and the medical evidence and the testimony of the vocational expert establish Williams is unable to work, the court concludes that the Commissioner's motion to alter or amend judgment is due to be denied.

Accordingly, it is

ORDERED that the defendant's motion to alter or amend judgment (Doc. No. 20) be and is hereby DENIED.

Done this 15th day of July, 2010.


_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE

5